IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Jeanene Zebley, individually and as surviving mother on behalf of Fallon Zebley, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Heartland Industries of Dawson, Inc., )<br>)<br>Defendant. ) | **MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 3:07-cv-23 |

Before the Court is a Motion for Summary Judgment filed by Defendant Heartland Industries of Dawson, Inc. ("Heartland") (Doc. #48). Plaintiff Jeanene Zebley ("Zebley") has filed a brief in opposition (Doc. #56). The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes that Minnesota workers' compensation law does not provide any remedy for Fallon Zebley's injuries and death, much less the sole and exclusive remedy, and therefore Heartland's Motion for Summary Judgment on that basis is DENIED. The Court further concludes there are issues of fact which must be further developed regarding any claims of professional negligence, so Heartland's Motion for Partial Summary Judgment as to any such claims is also DENIED.

## FACTUAL BACKGROUND

The instant action arises out of the death of Fallon Zebley, the daughter of Plaintiff Jeanene Zebley. On February 6, 2006, Fallon Zebley fell from the fifth-floor fire escape of the Ivers

1

Building in Fargo, North Dakota, suffering severe injuries which ultimately resulted in her death. At the time of the incident, Fallon Zebley was cleaning the Ivers Building under the supervision of Defendant Heartland, which provided her with supported employment services.

When she was a teenager, Fallon Zebley contracted encephalitis and became disabled as a result of the traumatic brain damage she suffered. As an adult in her early and mid-twenties, Fallon Zebley resided in Moorhead, Minnesota, and participated in numerous coordinated programs designed to aid individuals with disabilities. Heartland, a nonprofit Minnesota corporation with its principal place of business in Minnesota, worked with Fallon Zebley through one such program, which was designed to provide supported employment services and vocational training in the community. Heartland is licensed by the Minnesota Department of Human Services, and at the time of Fallon Zebley's death, had obtained workers' compensation insurance in Minnesota. Heartland does not have an account with Workforce Safety & Insurance ("WSI"), the North Dakota workers' compensation agency, and has never contributed premiums to the WSI fund.

Fallon Zebley began working for and receiving services from Heartland in 2003. She entered into the relationship with Heartland in Minnesota, and with the assistance of her one-on-one job coach, provided cleaning services at various locations in North Dakota and Minnesota. However, from August 2005 until the date of her death in February 2006, Fallon Zebley always cleaned at the same location in downtown Fargo, North Dakota, namely the Ivers Building. She never cleaned at locations in Minnesota during that time period.

Malena Rock, who was Fallon Zebley's job coach from August 2004 through February 2006, picked her up at the residential care facility where she lived and transported her to the job site each day. Rock also provided Fallon Zebley with one-on-one supervision and job training to assist her

in properly performing her cleaning duties at the job site. Heartland set the dates and hours which Fallon Zebley was to work, at one point changing her work program because five days per week became too stressful for her. At the time of her death, Fallon Zebley had been regularly working three days per week at the Ivers Building from approximately 10 a.m. to 1 p.m. Heartland paid Fallon Zebley for her work at an hourly rate, and it withheld all the necessary state and federal payroll taxes from her earnings.

On February 6, 2006, while she was cleaning the Ivers Building with the assistance of Rock, Fallon Zebley stepped out onto a fifth-floor fire escape and fell to her death in the parking lot below. The facts surrounding this tragic incident are in at least some respects disputed by the parties, and in any event they are not relevant to the disposition of this summary judgment motion, so the Court will not recount them here. Shortly after the incident, Heartland submitted a First Report of Injury under Minnesota workers' compensation law, but the claim was denied on the grounds that Fallon Zebley had acted intentionally and that her death did not arise out of the course and scope of her employment with Heartland. In February 2007, Plaintiff Jeanene Zebley, the mother of Fallon Zebley, filed this action seeking damages from Heartland for negligence and wrongful death.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). It is axiomatic that the evidence is viewed in a light most favorable to the non-moving party, and the non-moving party enjoys the benefit of all reasonable inferences to be drawn from the facts. See,

e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted). If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing a genuine issue for trial. Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005).

When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." Vacca, 875 F.2d at 1339 (citations omitted).

**I.     Whether Zebley's Action Should Be Dismissed as a Matter of Law on the Grounds that the Minnesota Workers' Compensation Scheme Provides the Exclusive Remedy**

Heartland contends that Zebley's suit should be dismissed in its entirety for lack of subject matter jurisdiction. More specifically, Heartland argues that the only remedy which Zebley may seek is provided by the Minnesota workers' compensation statutes, and accordingly this wrongful death action must be dismissed as a matter of law.

Much of the parties' briefing in this matter is devoted to choice-of-law issues. Heartland contends this Court should apply the law of Minnesota, particularly the Minnesota workers'

compensation statutes, to resolve the instant dispute. On the other hand, Zebley argues in favor of the application of North Dakota law and the North Dakota workers' compensation scheme. However, after carefully considering the statutory schemes of both states, the Court concludes it need not engage in a choice-of-law analysis because there is no true conflict.[1] Rather, the Court finds that the applicable North Dakota and Minnesota statutory provisions, when read together, lead to the conclusion that Zebley's claim is governed by North Dakota law.

It is well-established that the Minnesota workers' compensation system "is based on a mutual renunciation of common law rights and defenses by employers and employees alike." Minn. Stat. § 176.001; see also Stringer v. Minn. Vikings Football Club, LLC, 705 N.W.2d 746, 754 (Minn. 2005). The employer is liable "to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence." Minn. Stat. § 176.021. In exchange for this liability of the employer, the employee is generally precluded from bringing a tort action for damages against the employer. Stringer, 705 N.W.2d at 754. Therefore, an employer's liability under the Minnesota Workers' Compensation Act ("the Act") is considered to be "exclusive and in the place of any other liability." Minn Stat. § 176.031; see also Adams v. DSR Sales, Inc., 727 N.W.2d 139, 140 (Minn. 2007).

---

[1] The parties agree that North Dakota law governs the choice-of-law analysis, and both argue the choice-of-law factors set forth in Issendorf v. Olson, 194 N.W.2d 750 (N.D. 1972), a case which involved tort-based claims. However, it appears to the Court that at least some of the applicable principles governing choice of law in a workers' compensation case should be drawn from the North Dakota Supreme Court's decision in Barry v. Baker Elec. Coop., Inc., 354 N.W.2d 666 (N.D. 1984). In Barry, the court extensively analyzed conflicts of law in the context of workers' compensation, and it concluded that North Dakota law applied under several different tests, including Issendorf and a six-factor analysis drawn from Larson's Workers' Compensation. Id. at 672-73. At any rate, even if the Court engaged in a choice-of-law analysis in this case, it would still conclude that North Dakota law applies rather than Minnesota law. Fallon Zebley's injuries and resulting death occurred in North Dakota, and her employment was carried out in North Dakota, two factors of primary importance in a workers' compensation case. See id. at 672; see also 99 C.J.S. Workers' Compensation § 62.

However, there are also limitations on the applicability of the Minnesota workers' compensation scheme. In particular, Minn. Stat. § 176.041 sets forth provisions governing the applicability of the Act to out-of-state employment and out-of-state injuries. Section 176.041 provides, in relevant part:

> **Subd. 2. Extraterritorial application.** If an employee who regularly performs the primary duties of employment within this state receives an injury while outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury. If a resident of this state is transferred outside the territorial limits of the United States as an employee of a Minnesota employer, the resident shall be presumed to be temporarily employed outside of this state while so employed.
>
> **Subd. 3. Temporary out-of-state employment.** If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside of this state, such injury shall be subject to the provisions of this chapter.
>
> **Subd. 4. Out-of-state employment.** If an employee who regularly performs the primary duties of employment outside of this state or is hired to perform the primary duties of employment outside of this state, receives an injury within this state in the employ of the same employer, such injury shall be covered within the provisions of this chapter if the employee chooses to forego any workers' compensation claim resulting from the injury that the employee may have a right to pursue in some other state, provided that the special compensation fund is not liable for payment of benefits pursuant to section 176.183 if the employer is not insured against workers' compensation liability pursuant to this chapter and the employee is a nonresident of Minnesota on the date of the personal injury.
>
> **Subd. 5a. Out-of-state injuries.** Except as specifically provided by subdivisions 2 and 3, injuries occurring outside of this state are not subject to this chapter.
>
> **Subd. 5b.  North Dakota employers.** Notwithstanding the provisions of subdivision 4, workers' compensation benefits for an employee hired in North Dakota by a North Dakota employer, arising out of that employee's temporary work in Minnesota, shall not be payable under this chapter. North Dakota workers' compensation law provides the exclusive remedy available to the injured worker.

Applying the provisions of § 176.041 to the facts of this case, the Court concludes Fallon Zebley simply was not eligible for Minnesota workers' compensation benefits at the time of her

death. Subdivision 2 does not apply here because Fallon Zebley regularly performed the primary duties of her employment with Heartland in North Dakota, not in Minnesota. Specifically, she regularly cleaned the Ivers Building in Fargo and had been doing so since August 2005. Likewise, subdivision 4 does not apply because although Fallon Zebley regularly performed the primary duties of her employment outside of Minnesota, she was not injured in Minnesota.

Furthermore, the Court finds that subdivision 3 does not apply because even though Fallon Zebley was hired in Minnesota by Heartland, a Minnesota corporation and employer, she was not "temporarily employed" outside of Minnesota at the time of her injury and death. The word "temporarily," as contained in subdivision 3, "is used in its most natural and ordinary sense, as meaning not of long duration, not permanent, but for a short time." Vaughn v. Nelson Bros. Constr., 520 N.W.2d 395, 396 (Minn. 1994) (citations omitted). The Court has carefully reviewed the Minnesota cases relied on by Heartland in support of its argument under subdivision 3, particularly Vaughn v. Nelson Brothers Construction, 520 N.W.2d 395 (Minn. 1994), and Fischer v. Malleable Iron Range Co., 225 N.W.2d 542 (Minn. 1975), and finds that they are distinguishable.

In Vaughn, the injured worker was employed as a traveling fixture superintendent who supervised the installation of fixtures at Target stores located in many states. 520 N.W.2d at 395-96. Each project on which he worked was considered a temporary job site, and he was injured while working on an eight-week long project in Wisconsin. Id. at 396. Similarly, in Fischer, the deceased employee was a division manager responsible for covering territory in southwestern Minnesota and western Iowa, and he traveled continuously between those two states as part of his employment. 225 N.W.2d at 544. On the contrary, the undisputed facts in this case indicate that Fallon Zebley worked only at the Ivers Building in Fargo for approximately six months prior to her death. She did not

clean at other locations in Minnesota during that time period, and the duties of her employment did not require her to continuously work in multiple states or locations for a relatively short period of time. Based on the foregoing analysis, the Court concludes that Fallon Zebley was not temporarily employed outside of Minnesota within the meaning of Minn. Stat. § 176.041(3).

Because Fallon Zebley was not subject to the coverage of the Minnesota Workers' Compensation Act under the plain language of any of the above-discussed subdivisions of § 176.041, the Court must conclude that her out-of-state injuries simply are not covered by the Act at all. See Minn. Stat. § 176.041(5a). It necessarily follows that Minnesota workers' compensation law cannot provide any remedy for Fallon Zebley's death, much less the sole and exclusive remedy as Heartland has advanced here.[2]

However, although Fallon Zebley was not entitled to workers' compensation coverage in Minnesota at the time of her death, the Court concludes she was subject to such coverage under North Dakota law. It is axiomatic that a state may generally apply its own workers' compensation law to a particular case when the state is either the place where the injury occurred or the place where the employment relationship is carried out. See Barry v. Baker Elec. Coop., Inc., 354 N.W.2d 666, 672 (N.D. 1984) (citing 4 Larson's Workers' Compensation § 86.10) (discussing when a state may constitutionally apply its local statutes in a workers' compensation case); see also 99 C.J.S. Workers' Compensation § 62. Here, although Fallon Zebley entered into her employment contract in Minnesota, both the duties of her employment and her unfortunate death occurred in North

---

[2] The Court notes that Heartland applied for workers' compensation benefits on behalf of Fallon Zebley in Minnesota, and the claim was denied on the grounds that the incident was an intentional act and that it did not occur in the course and scope of her employment with Heartland. The Court finds it immaterial for purposes of this summary judgment motion that Fallon Zebley was not denied benefits on the basis that she was not eligible for coverage based on her out-of-state employment and out-of-state injuries. The legal effect of Minn. Stat. § 176.041 remains the same.

Dakota. The Court finds these facts are clearly sufficient to give rise to a claim for workers' compensation benefits on behalf of Fallon Zebley under North Dakota law.

Furthermore, and perhaps implicit in the above conclusion, the Court finds that Fallon Zebley was clearly an employee of Heartland based on the undisputed facts as set forth in the record. For purposes of workers' compensation coverage, an "employee" is defined as "a person who performs hazardous employment for another for remuneration unless the person is an independent contractor under the 'common law' test." N.D.C.C. § 65-01-02(16); see also N.D.C.C. § 65-01-02(20) (defining "hazardous employment" as "any employment in which one or more employees are employed regularly in the same business or in or about the establishment"). Similarly, an "employer" is defined as "a person who engages or received the services of another for remuneration unless the person performing the services is an independent contractor." N.D.C.C. § 65-01-02(17).

The key inquiry in determining whether a person is an employee or an independent contractor focuses on who is in control. Doan ex rel. Doan v. City of Bismarck, 2001 ND 152, ¶ 19, 632 N.W.2d 815, 821. The employer's right to direct or control the means and manner of performing the work is dispositive regarding the employee or independent contractor classification, whether or not the right has been exercised. Id. at 821-22. The North Dakota workers' compensation agency, now known as WSI, has identified twenty factors which should be considered when determining whether an individual is an employee or an independent contractor. See Berger v. N.D. Workers Comp. Bureau, 2000 ND 224, ¶¶ 13-14, 620 N.W.2d 576, 580 (citing N.D. Admin. Code § 92-01-02-49). Under N.D.C.C. § 65-01-03, "[e]ach person who performs services for another for remuneration is presumed to be an employee of the person for whom the services are

9

performed, unless it is proven that the person is an independent contractor under the 'common law' test."

After considering the facts of this case, particularly in light of the twenty-factor test contained in N.D. Admin. Code § 92-01-02-49, the Court finds that Fallon Zebley was an employee of Heartland as a matter of law.  Heartland clearly controlled the details of Fallon Zebley's work in almost every possible way.  Heartland employees drove Fallon Zebley to her job at the Ivers Building, set the dates and times which she was required to work, and directly supervised her on a one-on-one basis while she performed her cleaning tasks.  Heartland had a regular and continuing relationship with Fallon Zebley, as she had worked for the company since 2003, and at the Ivers Building in particular for more than six months.  Heartland paid Fallon Zebley an hourly wage for her work on a bimonthly basis, and it submitted payroll and other taxes on her behalf.  The fact that Fallon Zebley was a vulnerable adult who was provided with "supported employment services" by Heartland does not change her status as an employee under North Dakota law.

Because Fallon Zebley was an employee of Heartland who performed the duties of her work in North Dakota, the Court also concludes that Heartland should have paid into the North Dakota workers' compensation fund on her behalf.  Section 65-08-01(4), N.D.C.C., provides that "[a]n employer whose employment results in significant contacts with this state shall acquire workforce safety and insurance coverage in this state."  Fallon Zebley's employment meets the definition of "significant contacts" set forth in the statute, as Heartland was her only employer, and she earned at least 25% of her gross annual income from Heartland for services rendered in North Dakota.

If Heartland had contributed the requisite premiums to the North Dakota workers' compensation fund, it would be an insured employer subject to the protections of the North Dakota

Workers' Compensation Act ("the Act").  Under North Dakota law, when an employer is in compliance and has been contributing to the fund, an injured employee's remedy against that employer is limited exclusively to recovery under the workers' compensation statutes.  Smith v. Vestal, 494 N.W.2d 370, 373 (N.D. 1992) (citing N.D.C.C. §§ 65-01-01, 65-01-08, 65-04-28). Under the legislatively created "settlement" of workers' compensation claims embodied by the Act, the employee gives up the right to sue the employer for negligently inflicted injuries or death, in exchange for certain benefits for all workplace injuries, regardless of fault.  Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 454 (N.D. 1994); see also N.D.C.C. § 65-04-28.

However, when an employer is uninsured and fails to pay into the workers' compensation fund, that employer loses the benefit of the exclusive remedy provisions.  See N.D.C.C. §§ 65-09-01, 65-09-02.  Indeed, N.D.C.C. § 65-09-02 provides, in relevant part:

> An employee whose employer is in violation of section 65-04-33, who has been injured in the course of employment, or the employee's dependents or legal representatives in case death has ensued, may file an application with the organization for an award of compensation under this title and in addition may maintain a civil action against the employer for damages resulting from the injury or death.  In the action, the employer may not assert the common-law defenses of:
> 1. The fellow servant rule.
> 2. Assumption of risk.
> 3. Contributory negligence.
>
> The organization is subrogated to the recovery made in the action against the uninsured employer. . . . A determination by the organization that a person is not an employer required to obtain workforce safety and insurance coverage under this title is a defense to any claim that the person failed to obtain coverage for the time period during which the determination is effective.

The North Dakota Supreme Court has construed this statute and held that it provides dual remedies against an uninsured employer.  See Gepner v. Fujicolor Processing, Inc., 2001 ND 207, ¶ 18, 637 N.W.2d 681, 686.  An injured employee of an uninsured employer may seek and recover workers'

compensation benefits from WSI. Id. The injured employee may also "sue the employer in tort for damages" resulting from the work injury. Id.

Here, because Heartland was an uninsured employer in North Dakota at the time of Fallon Zebley's death, it may be sued in tort for damages under the dual remedies provision of N.D.C.C. § 65-09-02. Accordingly, the Court concludes that the instant action, a wrongful death suit brought by Fallon Zebley's mother, is not barred as a matter of law and must be allowed to proceed.[3] For all the foregoing reasons, Heartland's Motion for Summary Judgment on the grounds that Minnesota workers' compensation law provides the exclusive remedy in this matter is DENIED.

## II. Whether Partial Summary Judgment Should Be Granted as to Any Claims of Professional Malpractice or Negligence

Heartland also contends that the undisputed facts in this case do not give rise to any claims for professional malpractice or negligence, but rather only ordinary negligence. Heartland further argues that partial summary judgment should be granted in its favor as to any such potential claims of professional negligence, thereby eliminating the need for expert testimony at trial. Zebley counters that Heartland is a "health care organization" under N.D.C.C. § 28-01-46, and therefore Heartland's conduct may appropriately be evaluated against a standard of professional negligence.

Although on its face, it appears that this is more appropriately an ordinary negligence case, the Court is unable to make such a determination to a legal certainty at this time. The parties have given rather short shrift to their briefing of this issue, and the Court concludes that on this record, it would be inappropriate to grant summary judgment as to any claims of professional negligence. Once the facts of this case have been fully developed at trial, the Court will then be in a position to

---

[3] For purposes of resolving this summary judgment motion, the Court finds it unnecessary to decide whether Fallon Zebley's death arose out of and during the course of her employment. Heartland's status as an uninsured employer under North Dakota law is sufficient to allow this wrongful death action to move forward.

determine whether any claims of professional negligence are supportable and whether the jury should be instructed on those claims. However, at this time, Heartland's motion for partial summary judgment as to any claims of professional negligence is DENIED.

## DECISION

For all the foregoing reasons, the Motion for Summary Judgment filed by Defendant Heartland is hereby **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated this 11th day of September, 2008.

       /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court